UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| LARSEN LAW OFFICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DAVID M. LARSON<br>D/B/A LARSON LAW OFFICE<br><br>Defendant. | **Case Number**: 1:16-cv-1449-PBJ |

# EXPERT REPORT OF PETER KENT

## JANUARY 13TH, 2017

# TABLE OF CONTENTS

I. Assignment ....4
II. My Qualifications ....4
III. Compensation ....6
IV. Materials Considered ....6
V. Technical Background ....6
A. Web Site....6
B. Web Pages....7
C. Web-Page Source Code ....7
D. HTML Tags ....8
E. Major Search Engines: Google, Bing, and Yahoo! ....10
F. Search Terms & Search Results....10
G. Keywords ....10
H. Web Page Search Results: Organic & PPC ....11
I. Local Results ....11
J. Ranking....12
K. Search Engine Optimization ....12
L. The WayBack Machine ....13
M. DomainTools ....13
VI. My Opinions ....13
A. Defendant Began Using Plaintiff's Mark in its Web Pages Sometime Between July 31st, 2013 and May 9th, 2014....14
B. Defendant Reduced Use of Plaintiff's Mark in September, 2016 ....15
C. Defendant's Site Appears in Search Results for Plaintiff's Mark ....16
D. Why Defendant's Site Appears in Search Results for Plaintiff's Mark ....21
E. Local Directories Contain Plaintiff's Mark in Association With Defendant's Businesses ....24
F. There is Direct Potential for Initial Interest Confusion in the Major Search Engine Search Results and Directory Listings....29
VII. Conclusions....36
VIII. Exhibit A: Peter Kent's CV ....37
IX. Exhibit B: Cases Kent Testified in the Last Four Years....48
X. Exhibit C: Materials Considered....49
XI. Exhibit D: DomainTools - LarsonLawOffice-com-2017-01-10.pdf ....50
XII. Exhibit E: DomainTools - DavidLarsonLawOffice-com-2017-01-10.pdf....51
XIII. Exhibit F: Domains Registered by Defendant ....52
XIV. Exhibit G: http://web.archive.org/web/20140509040938/http://davidlarsonlawoffice.com/ ....53
XV. Exhibit H: http://web.archive.org/web/20160304231246/http://larsonlawoffice.com/ ....54
XVI. Exhibit I: http://web.archive.org/web/20160508013004/ http://davidlarsonlawoffice.com/ ....55
XVII. Exhibit J: view-source:http://web.archive.org/web/20160508013004/ http://davidlarsonlawoffice.com/ view-source:http://web.archive.org/web/20160304231246/ http://larsonlawoffice.com ....56
XVIII. Exhibit K: Search Results Provided to Me by Defendant's Counsel....57
XIX. Exhibit L: Searches I Performed - Google....58

XX. Exhibit M: view-source:http://www.davidlarsonlawoffice.com/ and view-source:www.larsonlawoffice.com ....59
XXI. Exhibit N: http://ctdesign-online.com/Portfolio/Default.aspx http://www.ctdesign-online.com/Portfolio/Default.aspx ....60
XXII. Exhibit O: 2017-01-09 - Synup.pdf ....61
XXIII. Exhibit P: 2017-01-09 - Yext.pdf ....62
XXIV. Exhibit Q: 2017-01-09 - MapQuest.pdf 2017-01-09 - YellowPages.com.pdf ....63
XXV. Exhibit R: http://mylocal.denverpost.com/englewood-CO/legal/attorneys/Larson-Law-Office-303-799-6895 ....64
XXVI. Exhibit S: Searches I Performed – Yahoo! ....65
XXVII. Exhibit T: Searches I Performed - Bing ....66
XXVIII. Exhibit U: https://www.lawyer.com/firm/larson-law-office-co.html ....67

## I.        Assignment

1.        I have been engaged by Thomas P. Howard, LLC, on behalf of Plaintiff Larsen Law Office, LLC (the "Plaintiff") to examine certain information related to Defendant's Web site and these sites' positions in the search results of the major search engines.

2.        The opinions I express in this report are based on my background and experience, along with my review of the materials provided to me by counsel. If called to testify, I expect to offer the opinions expressed in this report and the basis for those opinions.  I may modify or supplement the opinions that I express in this report if additional evidence or information comes to my attention.  I may modify or supplement my opinions in view of arguments made by any person retained by Defendant, including Defendant's counsel and anyone it engages to provide opinions.

## II.       My Qualifications

3.        I am an e-commerce and SEO ("Search Engine Optimization") consultant and author, and I am the owner of Peter Kent Consulting LLC.  I provide online e-commerce strategies to companies seeking to excel their business online, including search-engine optimization, Pay Per Click management, Web development, and Web-site "conversions" and usability, and Web marketing project management. My business address is 399 East Bayaud Avenue, Denver Colorado 80209.

4.        I have been working with computer technology since early 1979, and have been involved in a wide range of capacities within the technology business, beginning with operating computer equipment used for oil-field drilling engineering and drilling optimization purposes; then, starting in 1981, working with software-development teams (initially with the title of *Systems Analyst*), testing hardware and software systems, documenting said systems, designing user interfaces, training users, as well as installing, maintaining, and repairing systems. Since the mid-1980s, I have been involved in various additional functions in the technology business, including writing computer books, writing video-training scripts, creating websites, designing

software, project managing software-development, developing online-marketing strategies, managing online-advertising and search-engine-optimization campaigns, and more.

5.      I began working online (using mechanisms such as CompuServe and bulletin-board systems) in 1984, and on the World Wide Web in 1993 (at a time when the Web only held a few hundred websites); I first began registering domains and building websites in 1994.

6.      I have extensive experience in the e-commerce arena. In 1997 I founded Top Floor Publishing to sell Internet-related business books online through Amazon.com as well as Top Floor Publishing's own e-commerce store, which I personally set up myself. I also founded BizBlast, an e-commerce-service provider; the company was funded by Softbank, one of the world's largest venture-capital firms; the company provided small businesses with customized online stores operating on BizBlast's servers.  I was also VP of Web Solutions for IC&C, a national ISP (Internet Service Provider); my department provided both Web hosting and Web-development services, such as e-commerce sites that ran on our servers.  I also worked as VP of Marketing for Indigio, a Web-applications development firm with clients such as Avis, Budget Truck Rental, Budget Rent a Car, and Dex, one of the nation's largest Yellow Pages companies.

7.      I am currently a Principal at Peter Kent Consulting, LLC, which provides Internet-marketing and Internet-strategy consulting services to a varied client base.  I have provided consulting services in this arena to Amazon, Zillow, Avvo, Tower Records, Lonely Planet, Honey Baked Ham, and literally hundreds of small and medium companies, from real-estate agents to travel retailers, lawyers to non-profits.

8.      My current services include assisting clients in developing online-marketing strategies, increasing traffic through search-engine marketing and optimization, designing and implementing pay-per click search-advertising campaigns, designing websites, developing Web-applications, and revenue transaction conversion.

9.      In addition to my industry background, I have written many books about the Internet and technology in general.  My publications include seven editions of the *Complete Idiot's Guide to the Internet*, five editions of *Search Engine Optimization for Dummies*, one edition of *SEO for Dummies*, and dozens of other books about working online and doing

business online, including *Pay Per Click Search Engine Marketing for Dummies, How to Make Money Online with eBay, Yahoo!, and Google*, and *Poor Richard's Web Site: Geek-Free, Commonsense Advice on Building a Low-Cost Web Site*. I have written extensively for newspapers and periodicals, mostly in the area of technology and e-commerce, and have written and presented two video courses for Lynda.com (America's fastest growing education company) on search-engine optimization subjects and one on selling through Amazon; I also have a course on SEO running on Udemy.com.

10. I received a BA degree, with Honors, in Geography/Geology from the University of Sheffield, United Kingdom, in 1978.

11. Additional details regarding my professional experience and publications, and cases in which I have testified over the last four years, are set forth in my curriculum vitae, attached as Exhibits A and B to this report.

## III. Compensation

12. I am being compensated at the rate of $350 per hour for my services. The compensation is in no way tied to the outcome of this matter or my opinion.

## IV. Materials Considered

13. In developing my opinions, I have reviewed materials related to this matter, which are identified in Exhibit C hereto.

## V. Technical Background

14. Before explaining my opinions, I have clarified several technical terms used in this report and the Brown Report.

### A. Web Site

15. A Web site is a collection of Web pages and other forms of data, generally related to a particular subject or company, available on the World Wide Web (which itself runs across

the communication channels—wires and radio transmission—of the Internet). Web sites are usually, though not always, identified using a "domain name." For instance, Plaintiff has a Web site identified by the domain name LarsenLawOffices.com, while Defendant has the domain names DavidLarsonLawOffice.com and LarsonLawOffice.om

### B.     Web Pages

16.     A Web page is an electronic page of information that is displayed within a user's Web browser, typically comprising images and text. A single Web page may be created using multiple computer files, with at least an HTML file (which contains the page's text and layout instructions) and one or more other computer files containing images, video, audio, JavaScript program files, and so on.

17.     A user requests a Web page from a server by clicking on a link in another page, or by entering a *URL*—the address of a page—into a browser and pressing the Enter key on his or her computer.

### C.     Web-Page Source Code

18.     Web pages are created using HTML (HyperText Markup Language), a markup system that uses tags to convey information to the Web browser about how to "render" the Web page—that is, what to show to the viewer of the page (the text and images in the page, the font typeface color, and style, the layout of the page, and so on). The HTML is not visible to the reader of the Web page, unless the reader chooses to view it by opening a page's "source code." For instance, the user may use a mouse to right-click on a Web page and select View Page Source from the pop-up menu; may press a keyboard shortcut such as Cmd-Option-U or Ctrl-U; and so on. (Different browsers, on different operating systems, have different commands for viewing source code.)

19.     For example, the following illustration shows a portion of the source code of LarsonLawOffice.com as of January 17, 2017:

```
<!DOCTYPE html>
<html lang="en">
<head>
    <meta charset="utf-8">
    <meta http-equiv="X-UA-Compatible" content="IE=edge">
    <meta name="viewport" content="width=device-width, initial-scale=1">
    <title>Colorado Estate Planning Services | David M. Larson, PLLC</title>
    <meta name="description" content="David M. Larson is a Colorado Estate Lawyer.
David M. Larson, PLLC is a Colorado law firm with over 14 years experience helping
thousands of Colorado residents address their legal issues." />
    <meta name="keywords" content="Colorado Estate Planning Lawyer, Colorado
estate lawyer, Colorado wills, Colorado trusts, Colorado trust administration,
Colorado guardianships, Colorado asset protection" />
    <link href="/css/bootstrap.min.css" rel="stylesheet">
    <link href="/css/style.css" rel="stylesheet">
    <!-- HTML5 shim and Respond.js for IE8 support of HTML5 elements and media
queries -->
    <!-- WARNING: Respond.js doesn't work if you view the page via file:// -->
    <!--[if lt IE 9]>
      <script src="https://oss.maxcdn.com/html5shiv/3.7.2/html5shiv.min.js">
</script>
      <script src="https://oss.maxcdn.com/respond/1.4.2/respond.min.js"></script>
    <![endif]-->

    <link href="/css/animate.css" rel="stylesheet">

</head>
<body>
    <div class="wrapper">
        <header>
            <div class="top-line">
                <div class="container">
                    <div class="contact">
                        CALL TODAY TO SCHEDULE YOUR FREE INITIAL CONSULTATION
                        <span>
                            <img src="/images/phone.png" alt="Call Us"><a
href="tel:7203986255" title="Call Us">(720) 398-6255</a></span>
```

**D. HTML Tags**

20. HTML comprises content (text) intended to be read by users, along with "tags" that contain information and instructions for Web browsers and "bots" (other programs that may read the pages; for instance, search engines employ bots to download and read Web pages prior to indexing the pages). For example, the text in the image above *CALL TODAY TO SCHEDULE YOUR FREE INITIAL CONSULTATION* is intended to be read by the user, but the information above and below this text, enclosed by < > characters, are tags that contain layout information for the Web browser.

21. HTML tags may also contain information that is not used by the browser to render the page, but may be used for other purposes, such as providing search engines with information

about the page. In the source code, above, the tags that begin with *<meta* are known as "meta tags," and these tags are used to convey information. The most relevant to this case are the meta tag that contains the text *name="description"* (known as the *description meta tag*) and the meta tag that contains the text *name="keywords"* (known as the *keywords meta tag*).

22. The description meta tag is read by search engines, and used to provide a "snippet" in the search engines' search results. For example, the text from the description meta tag in the above source code may be seen in this search result from Google:

David M. Larson, PLLC: Colorado Estate Planning Services
davidlarsonlawoffice.com/ ▾
**David** M. **Larson** is a Colorado Estate Lawyer. **David** M. **Larson**, PLLC is a Colorado **law firm** with over 14 years experience helping thousands of Colorado ...

23. Some search engines may also use the description meta tag to help with ranking of search results, as explained later.

24. The keywords meta tag was originally designed to be used by search engines; it provided a way for the publisher of the Web page to tell the search engines what the page was about. However, the tag currently has little effect on search results; Google representatives have stated that Google does not read this tag or use it for search ranking, and other major search engines, though they may read and index the tag, do not give it much weight in the ranking for search results.

25. Another important tag is the <title> tag (actually a combination of two separate tags, the <title> and </title> tags). This tag is sometimes called a meta tag, though strictly speaking it is not. However, it is a significant tag, providing the page title to Web browsers (for instance, the text appears in the title bar or tab bar of the Web browser displaying the Web page, it appears in the history list, and so on). The title text is often used by search engines to provide the heading—the first line of text—when linking to the Web page in the search results. It is also a powerful mechanism for helping to rank a Web page in the search results.

### E.      Major Search Engines: Google, Bing, and Yahoo!

26.      The United States has three major search Web sites that provide the majority of search results to Americans. These are Google.com, Bing.com, and Yahoo.com. Combined these three systems provide around 97.6% of all search-engine search results; around 65% are provided by Google alone.[1] Thus many businesses actively seek to rank well in the search results provided by these three search engines, for keywords that the businesses feel their prospective customers may be using when searching for the type of products and services provided by the businesses.

### F.      Search Terms & Search Results

27.      A search term is a piece of text—one or many words—typed into a search engine's Search box, a piece of text for which someone searches; it is also often known as a *search query*. For example, a consumer wishing to buy *blue widgets* may type the term *blue widgets* or *buy blue widgets*, or some other variation, into a search engine and then press the keyboard's 'Enter' or 'Return' key. The search engine then looks for pages in its index that match this search term, and returns a "search results" page (sometimes known as a SERP, *search engine results page*).

28.      The search-results page contains a collection of links that point to various pages that may be useful to the searcher along with, for each link, some ancillary information, such as the URL of the page and a short description.

### G.      Keywords

29.      A keyword is a piece of text—one or more words—that describes the content of a document in an information-retrieval system. In the context of the World Wide Web and search engines, keywords are used to describe the content of Web pages.

30.      In effect, keywords are the "reciprocal" of search terms. When someone searches at a search engine for the search term *blue widgets*, the search engine attempts to provide a search-results page listing Web pages that are good matches for the keywords *blue widgets*.

---

[1] https://www.comscore.com/Insights/Rankings/comScore-Releases-February-2016-US-Desktop-Search-Engine-Rankings

Today's search engines are very sophisticated, and attempt to make this match using literally hundreds of criteria, but at the core is keywords, and thus keywords are very important to anyone attempting to rank a page highly in the search results for a particular search phrase.

### H.    Web Page Search Results: Organic & PPC

31.    Search-results pages contain links to different kinds of materials—Web pages, maps, images, videos, and so on. Originally search engines just linked to Web pages, and even today links to Web pages are the predominant form of search results.

32.    The links to Web pages that are displayed on the search-results page come from two different sources: the "organic" index and the PPC (Pay Per Click) advertising index. In this report I ignore PPC results, as they are not relevant to the case and indeed few PPC ads appeared in the search results I examined, and none of those ads were from either party.

33.    Search results pages are predominantly made up of "organic" results. These are the free, non-paid results; that is, the owners of the listed Web pages do not pay to be included in these results. Rather, the search engines use "searchbots" to download copies of the pages and index them (Google, for instance, has downloaded literally hundreds of billions of pages), and the search engines display links to the pages that most closely match a searcher's search query.

### I.    Local Results

34.    Some search results pages also include "local" results, based on whether the search engine feels that the search query is likely to be a local query, a query that would be best served by providing information about businesses in the searcher's geographic region.

35.    If someone searches for *pizza*, for instance, the search engine will probably display information about local pizza restaurants, often including a map. The search engines regard all the search terms I reviewed in this report as "local" search terms, and thus attempted to find Web pages that were related to businesses in my geographic area, as I describe later.

### J.        Ranking

36.    The phrase "search rank" refers to the position of a link to a Web page in the organic search results. If the link to a particular page is the first organic listing on the page, it's said to be "ranking number 1," if it's in the second position it's "number 2," and so on.

37.    Organizations promoting themselves on the Web like to have high search ranks; the higher one's link appears on the page, the more likely it is to be clicked upon by the searcher. Thus a new industry has grown rapidly over the last 15 or so years, *search-engine optimization*. Many Web-site owners actively engage in this practice, and there are thousands of companies providing various search-engine optimization services.

### K.        Search Engine Optimization

38.    Search engine optimization (SEO) refers to carrying out various tasks with the goal of getting the major search engines to rank a particular Web site or Web page high up in the search results, so that more people see the link to the site or page and click on that link.

39.    Search-engine optimization focuses mainly on keywords; a business or organization first determines what types of search queries (keywords) its potential site visitors use when searching for the types of products and services that the business provides. The business then chooses which keywords to target, and uses those keywords in various ways.

40.    Optimization may be broken into two areas: *on-page* optimization and *off-page* optimization. On-page optimization refers to doing things to the actual Web pages that one wants to rank well in the search results. This includes putting keywords into Title tags, Description tags, URLs, H1 headings with page content, within the content itself, in links between pages, and so on.

41.    Off-page optimization refers to the creation of links from other Web sites to the Web pages that one wants to rank well. Modern search engines use links between pages in various ways, to tell them what the referenced pages are about and how important the pages are likely to be. Of particular importance is getting keywords into the "anchor text," the text that is visible to the user when clicking on a link. Thus a large part of SEO revolves around finding ways to get Web sites to place links pointing back to the pages one wants to rank well.

### L. The WayBack Machine

42. The WayBackMachine is a service of Archive.org, referenced a number of times in this report. The Internet Archive, which is found at www.archive.org, is a “library of Internet sites and other cultural artifacts in digital form.” The Internet Archive uses Web crawlers to retrieve and archive Web pages. The Internet Archive provides an interface, called the WayBackMachine, for users to access past versions of Web pages archived by the Internet Archive’s Web crawlers.

43. The WayBackMachine is regarded as a reliable, authoritative resource. While it does not provide a complete record of all changes to every Web site, it does provide, for some Web sites, a history of “snapshots” that provide a way to see how a Web site appeared in the past. Evidence from the WayBackMachine is used frequently in litigation, and has been accepted as valid by many courts.

### M. DomainTools

44. DomainTools provides a domain-research service. The company has been collecting information about domain registrations since 2001. It "takes periodic snapshots of domain name Whois records and stores them for subsequent analysis. The database contains billions of Whois records across hundreds of millions of domains” [Exhibit D, Page 6].

45. This report refers to DomainTools data in several places. DomainTools is regarded as a reliable and authoritative resource in the Internet sector.

## VI. My Opinions

46. It is my understanding that Plaintiff has established exclusive rights to the marks *Larsen Law Offices* and *Larsen Law*, and has continuously used the *Larsen Law Offices* mark to promote its legal services since 2003 [Plaintiff’s Cease & Desist Letter of May 9, 2016].

47. Plaintiff alleges that Defendant’s repeated and continuing use of Plaintiff’s mark in its online marketing efforts has caused and now causes lead to initial interest confusion in the

search results of major search engines, including Google, Bing, and Yahoo! Plaintiff claims that Defendant's actions cause the following problems:

1. Defendant's Web site appears in the search results of the major search engines when potential clients of the Plaintiff search for Plaintiff's Web site.
2. Initial interest confusion occurs when consumers searching for Plaintiff's Web site instead find Defendant's Web site thereby causing consumers to be confused and believe that Defendant's Web site is Plaintiff's Web site.
3. Due to this initial interest confusion, potential clients of Plaintiff are likely to click on the link to Defendant's Web site.
4. Due to this initial interest confusion, Defendant may capture Plaintiff's potential visitors or clients, resulting in their never doing business with Plaintiff. Similarly, potential clients of Plaintiff that mistakenly click on Defendant's Web Site may decide that Defendant does not provide the services they need, thereby mistakenly determining that *Plaintiff* does not provide the services they need.

### A. Defendant Began Using Plaintiff's Mark in its Web Pages Sometime Between July 31st, 2013 and May 9th, 2014

48. Defendant has registered dozens of domain names (Exhibit F; list provided by DomainTools.com), including the two that are at issue in this case, DavidLarsonLawOffice.com and LarsonLawOffice.com.

49. Defendant's Web-development company, CT Design Online, of Gatesville, TX, registered DavidLarsonLawOffice.com on Defendant's behalf on July 31st, 2013 (Exhibit E, Page 39). By at least as early as May 9th, 2014 (according to the WayBackMachine, see Exhibit G), Defendant was using Plaintiff's mark in Web pages on the Web site located at DavidLarsonLawOffice.com.

50. The domain name LarsonLawOffice.com was originally registered by or on behalf of several out of state attorneys starting in November of 1999 (Exhibit, Page 53), first in Idaho and then in Arizona. Sometime between June 24th, 2012 and December 20th, 2013 (Exhibit D, Page 37 and Page 35) the Arizona attorney using it at that time stopped using it, and the domain was listed for sale at least as early as January 2nd, 2014 (Exhibit D, Page 35). Defendant then registered LarsonLawOffice.com sometime between Dec. 8th, 2015 and January 29th, 2016 (see Exhibit D, Pages 13 - 15); most likely on October 25th, 2015 (as referenced by the Registrar

Registration Expiration Date on Page 13 of Exhibit D). By at least as early as March 4th, 2016, Defendant was using Plaintiff's mark within Web pages of the Web site associated with this domain, as is shown from a WayBackMachine archive of the home page of the Web site (Exhibit H).

51.     Thus, sometime between late July 31st, 2013 and May 9th, 2014 Defendant began using Plaintiff's mark on DavidLarsonLawOffice.com Web pages, and sometime between October, 2015 and March 4th, 2016, Defendant began using Plaintiff's mark on LarsonLawOffice.com Web pages.

52.     Thus, Defendant has been using Plaintiff's mark on Web pages at least as early as May 9th, 2014, and potentially as early as July 31st, 2013.

### B.     Defendant Reduced Use of Plaintiff's Mark in September, 2016

53.     I explain below how Defendant has used, and continues to use, Plaintiff's mark, and also how Defendant has reduced use of Plaintiff's mark subsequent to the filing of this lawsuit, while continuing some use as detailed below.

54.     On May 9th, 2016, Plaintiff's counsel sent a Cease and Desist letter to Defendant, which, I am informed, Defendant ignored. I have also been informed that another letter was sent on May 26, 2016, and this letter was also ignored. Defendant did not make any changes to Defendant's Web sites immediately or soon after these letters were sent. Rather, Defendant did not make changes to the site, or remove Plaintiff's mark, until after the current lawsuit was filed on June 14th, 2016.

55.     The WayBackMachine shows that as of May 8th, 2016, Defendant was still using Plaintiff's mark both visually, in Defendant's Web-site logo (Exhibit I), and within the source code of the site (Exhibit J).

56.     The search results provided to me by Plaintiff's counsel also show that at least on or recently before August 18th, 2016, Defendant was still using Plaintiff's mark in Defendant's Web site (Exhibit K; these search results are described in more detail later in this report). However, it appears that Defendant changed the Web sites, removing all occurrences of the exact

phrase *Larson Law Office* sometime before October 2nd, 2016, as shown by the WayBackMachine copy of the DavidLarsonLawOffice.com home page on that date[2]. The phrase had also been removed from LarsonLawOffice.com by that time[3]. Counsel has informed me that Plaintiff observed that those changes were made sometime during September, 2016.

57. However, as explained later in this report, Defendant did not stop all use of this phrase. Rather, the phrase still appears in both the domain names, and in numerous online business directories.

### C. Defendant's Site Appears in Search Results for Plaintiff's Mark

*58.* The evidence that I have gathered and reviewed demonstrates that when consumers search for Plaintiff's mark in the major search engines, links to Web pages containing information about Defendant's business most often appear in the same search results. I examined screenshots provided to me by counsel for Plaintiff of searches performed on August 18th, 2016 on Google and, in the case of the *larson law office* search, on Bing.com. (Exhibit K). The links in the search results repeatedly point to Defendant's DavidLarsonLawOffice.com Web site; to a business listing in the DenverPost.com Web site (http://mylocal.denverpost.com/englewood-CO/legal/attorneys/Larson-Law-Office-303-799-6895); to a business listing in the Better Business Bureau Web site (https://www.bbb.org/denver/business-reviews/attorneys-and-lawyers/larson-law-office-in-englewood-co-90139763/) and, in one case, to another of Defendant's Web sites, LarsonLawOffice.com (in the case of the *larson law office* search). Detailed below is a list showing the searches conducted and the positions in which Defendant's links appeared in each page:

***larsen law offices colorado***

Organic Position #3

***larsen law office colorado***

Local Results Position #2

Organic Position #2

---

[2] http://web.archive.org/web/20161002112827/http://davidlarsonlawoffice.com/

[3] http://web.archive.org/web/20161004013256/http://larsonlawoffice.com/

Organic Position #9 [DenverPost.com]

***larsen law office denver***

Organic Position #2

Organic Position #10 [DenverPost.com]

***larsen law office* (Bing.com)**

Local Results – box on right side

Local Results Position #1

Organic Position #3

***larson law office denver***

Organic Position #1

Organic Position #6 [DenverPost.com]

Organic Position #8 [BBB.org]

*59.* I also carried out several current searches in Google, the United States' most popular search engine, and saved the results (see Exhibit L). I searched for the following terms, from a location in Denver (Google tracks the location of the searcher's computer, in order to provide search results customized for that location): *larsen law offices colorado, larsen law office colorado, larsen law office denver, larsen law offices denver, larsen law office, larsen law offices, larson law offices colorado, larson law office colorado, larson law office denver, larson law offices denver, larson law office,* and *larson law offices.*

*60.* My searches included Plaintiff's full company name (*larsen law offices*), the full company name along with likely location terms included (*colorado* and *denver*), the obvious and likely misspelling of the last word of the name (*office*), and also the same terms with the first word of the name using the common misspelling (*larson*).

*61.* I have been informed by counsel that minor differences in spelling—such as the difference between *larsen* and *larson* and between *offices and office*—are not enough to distinguish marks; that is, the two words may be considered the same from the perspective of a trademark and initial-interest confusion analysis.

62. I examined the search results for each search term (Exhibit L) and found that links to Defendant's business continue to appear immediately adjacent to links to Plaintiff, specifically in the form of links to Defendant's DavidLarsonLawOffice.com Web site and to a business

listing in the DenverPost.com Web site (Exhibit R). The following list shows the searches conducted and the positions in which Defendant's links recently appeared in the Google search results:

***larsen law offices colorado***

Organic Position #4

***larsen law office colorado***

Organic Position #4

***larsen law offices denver***

None

***larsen law office denver***

Organic Position #4

***larsen law offices***

None

***larsen law office***

Organic Position #7

***larson law offices colorado***

Local Results Position #3

Organic Position #1

***larson law office colorado***

Local Results Position #1

Organic Position #1

Organic Position #10 [DenverPost.com]

***larson law offices denver***

Organic Position #4

Organic Position #7 [DenverPost.com]

***larson law office denver***

Organic Position #1

Organic Position #7 [DenverPost.com]

***larson law offices***

Local Results Position #2

Organic Position #1

***larson law office***

Local Results Position #1

Organic Position #1

63. I carried out these same searches on Yahoo!, and got the following results (Exhibit S):

***larsen law offices colorado***

Organic Position #3

Organic Position #5 [leads to http://www.yellowpages.com/littleton-co/larsen-law-offices, which does not include a link to Plaintiff but does contain a link to Defendant's site, listed as *Larson Law Office*]

***larsen law office colorado***

Organic Position #3

***larsen law offices denver***

Local Results Position #3

Local Results Position #4

***larsen law office denver***

Organic Position #3

***larsen law offices***

None

***larsen law office***

Local Results Position #2

Local Results Position #3

***larson law offices colorado***

Organic Position #2

***larson law office colorado***

Organic Position #1

Organic Position #4

Organic Position #5 [https://www.lawyer.com/firm/larson-law-office-co.html]

***larson law offices denver***

None

***larson law office denver***

Organic Position #8 [https://www.lawyer.com/firm/larson-law-office-co.html]

***larson law offices***

Local Results Position #4

***larson law office***

Local Results Position #4

Organic Position #7

64. I carried out these same searches on Bing, and got the following results (Exhibit T):

***larsen law offices colorado***

Organic Position #3 [leads to http://www.yellowpages.com/littleton-co/larsen-law-offices, which does not include a link to Plaintiff but does contain a link to Defendant's site, listed as *Larson Law Office*]

Organic Position #7

***larsen law office colorado***

Local Results Map, top right of page

Organic Position #3

Organic Position #8 [leads to http://www.yellowpages.com/littleton-co/larsen-law-offices, which does not include a link to Plaintiff but does contain a link to Defendant's site, listed as *Larson Law Office*]

Organic Position #9

***larsen law offices denver***

Local Results Map, top right of page

Organic Position #3 [leads to http://www.yellowpages.com/littleton-co/larsen-law-offices, which does not include a link to Plaintiff but does contain a link to Defendant's site, listed as *Larson Law Office*]

Local Results Position #6

***larsen law office denver***

Local Results Map, top right of page

Organic Position #3

***larsen law offices***

None

***larsen law office***

None

***larson law offices colorado***

Local Results Map, top right of page

Organic Position #2

Local Results Position #1

Local Results Position #2

Organic Position #9

***larson law office colorado***

Local Results Map, top right of page

Organic Position #1

Local Results Position #1

Local Results Position #3

Organic Position #4

Organic Position #5 [https://www.lawyer.com/firm/larson-law-office-co.html]

***larson law offices denver***

Organic Position #3 [https://www.lawyer.com/firm/larson-law-office-co.html]

Organic Position #6

***larson law office denver***

Organic Position #6

Organic Position #7 [https://www.lawyer.com/firm/larson-law-office-co.html]

***larson law offices***

None

***larson law office***

None

### D. Why Defendant's Site Appears in Search Results for Plaintiff's Mark

65. Defendant has used and is still using the words *Larson Law Office*, which are almost identical to Plaintiff's mark *Larsen Law Offices*. That use is causing the search engines to include Defendant's Web pages with Plaintiff's mark. Defendant's use is ongoing in several ways:

**In the Business Name**

Beginning on at least May 9, 2014, Defendant used the mark *Larson Law Office* in the pages of his DavidLarsonLawOffice.com Web site. That mark was also used in his LarsonLawOffice.com Web site by March 4, 2016. This use continued until approximately September 2016. As detailed further below, those same words were used in his Web site's HTML Title tag, description meta tag, in the alt attribute of an image tag, within the body text visible to visitors, and within the copyright notice in each page's footers. Exhibit J shows the source code from the home pages of both Web sites as it appeared on May 8th, 2016 (DavidLarsonLawOffice.com) and March 4th, 2016 (LarsonLawOffice.com), as provided by the WayBackMachine.

Although Defendant recently stopped using the *Larson Law Office* mark in his Web pages, his business continues to be listed as *Larson Law Office* in the Denver

Post's business directory, at http://mylocal.denverpost.com/englewood-CO/legal/attorneys/Larson-Law-Office-303-799-6895.

**In the Domain Name**

Defendant has two Web sites that I am aware of, DavidLarsonLawOffice.com and LarsonLawOffice.com. Both domain names continue to incorporate the *Larson Law Office* mark.   Search engines read keywords within domain names and use them for helping to rank search results.  The search engines are using Defendant's incorporation of the *Larson Law Office* mark in its domain names to draw a connection between Plaintiff and Defendant.

**In Title Tags**

Up until the recent past, as noted above, the term *Larson Law Office* appeared in Defendant's Web page title tags:

```
<title>Colorado Estate Planning Services | Larson Law Office</title>
```

Although Defendant no longer has this text in his title tags, the term *larson* does still appear in the tags (Exhibit M).

In regards to SEO, Title tags are one of the most important components of a Web page, carrying great weight in the ranking algorithm. This use has had a significant effect on the placement of Defendant's Web pages adjacent to Plaintiff.

**Description Meta Tag**

In the past, as noted above, the term *Larson Law Office* appeared in Defendant's Web page Description meta tags:

```
<title>Colorado Estate Planning Services | Larson Law Office</title>
```

Although Defendant no longer has this text in his Description meta tags, the terms *larson* and *law* do still appear in the tags (Exhibit M). Although Google has stated that it does not use the Description meta tag for ranking search results, but the other search engines do still use it for that purpose. This Description meta tag has had a direct effect on those search engines' placement of Defendant in the search results.

**Body Text**

In the past, as noted above, the term *Larson Law Office* appeared in Defendant's Web page body text (that is, the text that someone reading the page would see). The following is from the text higher up on the page, in the main content area:

```
<div class="text">
    Larson Law Office is a Colorado law firm with over 14 years experience helping thousands of Colorado residents address their legal issues.
```

The following is from the footer of the page (also visible to people viewing the page):

```
<p class="text text-center small">Copyright &copy; 2016. All Rights Reserved.  Larson Law Office</p>
```

Although Defendant no longer has the exact phrase *larson law office* in his body text, the terms *larson, law*, and *office* do still appear in the body text separately (Exhibit M).

Search engines read body text, and use the keywords within the body text to assist with ranking pages in the search results.

**In Image "alt" Text**

Image tags tell browsers to place a particular image in a particular location within a Web page. The following image tag was used in Defendant's Web pages in the past (Exhibit J), to place Defendant's logo into the top left of each page:

```
<img
src="/web/20160304231246im_/http://larsonlawoffice.com/images/logo.png"
alt="Larson Law Office">
```

The "alt attribute" text (in the example above, *Larson Law Office*) is intended to be used by the browser if image display has been turned off; displaying the text is the alternative to displaying the image. Defendant does not appear to be using this text in his image tags at present, though the term *larson* does still appear in the tag.

```
<img src="/images/logo.png" alt="David M. Larson, PLLC">
```

Search engines index the alt-attribute text and use it in ranking search results.

66. Search engines also look at links pointing to a particular Web page to determine the subject matter of that page, and to help to rank the page for particular search phrases. If a search engine sees the text *blue widget* in link text pointing to a particular page, it knows that the referenced Web page is related to the term *blue widget*.

67. There are links from Web sites containing the mark *Larson Law Office* that are currently pointing to Defendant's Web. For instance, Defendant's Web developer, CTDesignOnline, has two pages on its Web site (Exhibit N) that link to DavidLarsonLawOffice.com using the link text *David Larson Law Office*, as shown below. Linking in this manner informs search engines that DavidLarsonLawOffice.com is a good match for the search phrase *larson law office* and similar phrases.



### E. Local Directories Contain Plaintiff's Mark in Association With Defendant's Businesses

68. Some of the search results I have reviewed above are coming from "local business directories." The search engines often include local-directory results within the search results, and I have shown the results from three different local directories above:

**Google My Business**

**Denver Post Business Directory**

Larson Law Office in Englewood, Colorado 80112 - 303-799-6895 ...
mylocal.denverpost.com/.../attorneys/Larson-Law-Office-303-799-6895
The Denver Post knows Denver, Colorado. Find, map, and rate the best Denver restaurants, services, and businesses. ... Larson Law Office ...

**Bing Local**





69. In fact, Defendant's business is listed in *numerous* business directories using Plaintiff's mark. I used two services, Synup.com and Yext.com, to search business directories for Defendant's business[4]. Synup searched 38 directories, and found that Defendant's business is listed as Larson Law Office in 10 of them (Exhibit O). Yext searched 51 directories, and found that Defendant's business is listed as Larson Law Office in 24 of them (Exhibit P). An example of one of these listings is shown below[5]:

70. Thus, there are at least 34 directories in which Defendant's business is listed as *Larson Law Office* (31 directories found by these services, plus the DenverPost, BBB, and Lawyer.com directories I discussed earlier):

AmericanTowns.com
Around Me
Avantar
BBB.org
Bing
ChamberOfCommerce.com
CitySearch
Co-Pilot
DenverPost.com
DexKnows
Express Business Directory
EZLocal
Facebook
GoLocal247

[4] As of January 17, 2017; www.Yext.com, www.Synup.com
[5] http://www.dexknows.com/business_profiles/-l2369007590

Google
HotFrog
InsiderPages
Kudzu
LocalPages
LocalStack.com
MapQuest
MerchantCircle
Pointcom
ShowMeLocal
Superpages
Where To?
WhitePages
Yahoo!
Yasabe
Yellowbot.com
YellowMoxie
YellowPageCity.com
YellowPages.com

71. These directory listings have the potential to come up in search results from the major search engines, providing a separate mechanism through which Defendant's listing may display Plaintiff's mark when a consumer conducts a search for Plaintiff.

72. Furthermore, although my analysis has focused on searches with major search engines, it should not be forgotten that many people also search business directories directly, and in such cases Defendant's listing may appear using Plaintiff's mark. For example, I searched MapQuest[6] for *larsen law offices* and was provided with the misleading information shown below (Exhibit Q):

[6] www.MapQuest.com



73.     As can be seen from the illustration, the very first and second search results are *Larson Law Office*, Defendant's entry. Not shown in this illustration (but visible in the Exhibit) is the associated map which shows the location of Defendant's office, but does not show Plaintiff's location.

74.     I also searched YellowPages.com for *larsen law offices* and found the following (see Exhibit Q); Defendant's listing is the second non-paid listing (the first three entries are advertisements) and Plaintiff's listing does not appear:



75.     Note also that this listing is linked to from the Bing and Yahoo! search results, as I reported earlier in this report, as is the Lawyer.com listing shown below (Exhibit U):



**F. There is Direct Potential for Initial Interest Confusion in the Major Search Engine Search Results and Directory Listings**

76. I have explained above *why* Defendant's Web site is currently appearing in the search results after searching for Plaintiff's mark, and that Defendant's Web site is also listed in numerous business directories using Plaintiff's mark. Now I will examine what searchers see, and the potential for initial interest confusion.

77. It is my understanding that "[I]nitial interest confusion results when a consumer is seeking a particular trademark holder's product and instead is lured to those of a competitor by its use of the same or a similar mark. Even though the consumer may eventually realize that the product is not the one originally sought, he may stay with the competitor. In that way, the competitor has captured the trademark holder's potential visitors or customers. But even if the consumer quickly becomes aware of the source's actual identity, or where no actual sale results, there is nonetheless damage to the trademark's senior user. This damage can manifest itself in three ways: (1) the original diversion of the prospective customers' interest; (2) the potential consequent effect of that diversion on the customer's ultimate decision whether to purchase caused by an erroneous impression that two sources of a product may be associated; and (3) the initial credibility that may be accorded by the interested buyer to the junior user's products—customer consideration that otherwise may be unwarranted and that may be built on the strength of the senior user's mark, reputation and goodwill. Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1239 (10th Cir. 2006); see also Buckman,183 A.L.R. Fed. 553.

78. As shown above, Defendant has used Plaintiff's mark on Defendant's Web sites in his Web site metatags and his domain names, and well as on multiple directory listings linking to his Web sites. His listings have appeared and continue to appear in multiple search engine results in response to consumer searches for Plaintiff. In light of the same, Defendant's actions could cause a consumer to accidentally go to Defendant's site instead of Plaintiff's which I understand to be a core element of initial interest confusion.

79. Underlining the above is what the relevant consumer views when attempting to search for Plaintiff *Larsen Law Office*. Searches conducted in August 2016 reflect the following, each of which links to Defendant's Web site (Exhibit K):

***larsen law office denver***

Larson Law Office: Colorado Estate Planning Services
www.davidlarsonlawoffice.com/
David M. Larson is a Colorado Estate Lawyer. Larson Law Office is a Colorado law firm with over 14 years experience helping thousands of Colorado residents ...

Larson Law Office in Englewood, Colorado 80112 ... - The Denver Post
mylocal.denverpost.com/englewood-CO/.../attorneys/Larson-Law-Office-303-799-68...
The Denver Post knows Denver, Colorado. ... Larson Law Office ... Linda Sommers, Attorney at Law Linda brings practical experience and a Christian outlook to ...

***larsen law office* (Bing.com)**

Inverness Golf Club
© 2016 HERE
Larson Law Office
Directions
Website
Address: 88 Inverness Cir E Bldg E Ste 102, Englewood, CO 80112
Phone: (303) 799-6895
Suggest an edit · Is this your business?

Local results for **larson Law Office**
Bing Local
88 Inverness Cir E Bldg E Ste 102, Englewood, CO 80112 · (303) 799-6895
Directions · Details

Colorado Estate Planning Services | **Larson Law Office**
www.larsonlawoffice.com
Larson Law Office is a Colorado law firm with over 14 years experience helping thousands of Colorado residents address their legal issues

***larson law office denver***

Larson Law Office
1 review · Legal Services
32.4 mi · 88 Inverness Cir E · (303) 799-6895
Website
Directions

Larson Law Office in Englewood, Colorado 80112 ... - The Denver Post
mylocal.denverpost.com/englewood-CO/.../attorneys/Larson-Law-Office-303-799-68...
The Denver Post knows Denver, Colorado. ... Larson Law Office ... Linda Sommers, Attorney at Law Linda brings practical experience and a Christian outlook to ...